370 So.2d 1323 (1979)
Marjorie Fry DAVIS, Plaintiff-Appellant,
v.
John F. TILLMAN, Defendant-Appellee.
No. 13838.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1979.
*1324 LeRoy Smith, Jr., Tallulah, for plaintiff-appellant.
Thompson L. Clarke, St. Joseph, for defendant-appellee.
Before PRICE, HALL and MARVIN, JJ.
PRICE, Judge.
This appeal was taken by the plaintiff-landowner from the judgment of the trial court holding that the defendant-contractor was not liable in damages for his failure to complete a land clearing contract because of excessive rainfall.[1]
The factual background giving rise to this litigation is summarized by the trial judge in his reasons for judgment as follows:
Marjorie Fry Davis, owner of considerable woodland in Concordia Parish, through her attorney in fact, Walter Davis, III, contracted with John F. Tillman to clear for cultivation 640 acres of land at the price of $123.00 per acre. The date of the contract was April 22, 1975 and provided for the completion before December 31, 1975. By the terms of the contract Tillman was to receive for his benefit and use any merchantable timber removed from the land, unless he failed to perform the contract, in which event he was to indemnify owner the amount for which the timber was sold, but in no case for an amount less than $3.00 per cord for pulpwood and $35.00 per thousand feet for logs. The contract also provided for a deposit in escrow of $25,000.00 by Tillman, which he agreed to pay owner in the event of default or non-performance. By the provisions of an escrow agreement executed simultaneously with the contract, the owner was authorized to certify to the escrow agent (the Bank) after December 31, 1975 that the contract had not been satisfactorily completed, whereupon the Bank was authorized to pay the deposit to the owner.
After the expiration date of the contract, December 31, 1975, plaintiff notified the bank of defendant's default in performance of his obligation under the agreement, and the bank paid plaintiff the $25,000 deposited in escrow. Plaintiff then filed this suit against defendant seeking to recover a total amount of $204,631.90 for the value of timber removed, damages to the surface drainage of the land, and for inconvenience resulting from the delay caused by defendant's failure to clear the land within the term of the contract.
In answer to the suit defendant alleged his failure to complete the work was caused by the unusual and excessive rainfall on the subject land during 1975 which prevented the performance of certain phases of the clearing during most of the contract period, and that plaintiff refused his request for an extension of time based on these unexpected circumstances. Defendant also reconvened seeking payment for the amount of work performed in clearing a portion of the tract under the doctrine of quantum meruit and sought the return of the escrow deposit of $25,000 withdrawn by plaintiff from the Louisiana Central Bank under the contract provision for liquidated damages.
Pursuant to its finding that defendant's failure to complete the work was due to a fortuitous event, the trial court rendered judgment rejecting all of plaintiff's demands for damages other than for the sum of $19,459.29 for the stumpage value of timber and pulpwood removed and sold by defendant. The judgment awarded defendant the sum of $4,305 as payment for the partial clearing of seventy acres based on the court's determination that defendant had performed fifty percent of the work on this number of acres. The court also ordered plaintiff to return the escrow deposit of $25,000 to Louisiana Central Bank in satisfaction of its judgment against defendant in the consolidated case.
*1325 Plaintiff assigns as error the trial court's finding that defendant was relieved of performance by a fortuitous event and the failure of the trial court to award her the full price defendant received for the timber removed from the property.
In arriving at the conclusion that a fortuitous event prevented performance of the contract, the trial judge made the following pertinent findings of fact:
There is no dispute of the fact that all of the clearing was not completed within the time stipulated in the contract, and by the terms of the escrow agreement, the withdrawal of the $25,000.00 deposit by Davis was contractually permissible, except for unfairness and disregard of the weather factor and Tillman's plea for an extension. However, defendant's failure to completely fulfill the contract because of the continuous and constant wetness of the ground and inundation of the low areas resulting from the abnormal, frequent and excessive rainfall, rather than from his own performance or non-performance, excuses him from penalty.
In other words, it was not defendant's fault that the contract was not executed in its entirety. He had no alternative during the period of the contract, with the weather as it was, to carry out the object of the contract. It was absolutely beyond his power to fulfill his obligation to clear the land during the period of the contract.
* * * * * *
The evidence establishes clearly and it is generally known that woodland can not be properly cleared with crawler tractors with blades when the ground is wet. Traction is reduced, the equipment bogs down, and the fallen timber and debris becomes buried in the mud, which creates a longlasting and expensive problem in cultivation.
* * * * * *
The intervals between the frequent rains were too brief for the land to dry out and this made performance impossible, through no fault of the contractor. (Testimony of Tillman, Raibble and Maxwell). The partial clearing that was performed was located on higher ground, accomplished by moving from place to place.
The operations of the Chicago Mill & Lumber Company in its land clearing, as well as the Tensas Soil Conservation Service, suffered the same experience in the year 1975. Rain is foreseeable, but excessive rain to the extent of 21 inches above normal, with abnormal frequency (a rain every three days), does not seem reasonably foreseeable, and in this case, under this contract, falls in the category of fortuitous event.
* * * * * *
The abnormal rain created impossible conditions throughout the term of the contract for defendant to perform, and the excessiveness was so great and continuous it was not reasonably foreseeable and preventable. The contract was not merely more difficult, burdensome, or unprofitable, under the conditions existing, it was impossible. To require human prudence to anticipate such abnormality in weather would ignore experience. The only fault of defendant was his failure to have included in the contract provisions for extension, but to penalize him for this renders Civil Code Article 1933 meaningless.
The foregoing findings of fact by the trial judge are supported by the evidence and his conclusions are in accordance with the pertinent provisions of the Louisiana Civil Code. Article 1933 provides in pertinent part:
When the breach has been passive only, damages are due from the time that the debtor has been put in default, in the manner directed in this chapter.
The rules contained in this and the preceding articles, however, are subject to the following exceptions and modifications:
* * * * * *
2. Where, by a fortuitous event or irresistible force, the debtor is hindered from giving or doing what he has contracted to give or do or is from the same *1326 causes compelled to do what the contract bound him not to do, no damages can be recovered for the inexecution of the contract.
3. There are two exceptions to the last rule: first, when the party in default has by his contract expressly or impliedly undertaken the risk of the fortuitous event, or of the irresistible force; secondly, if the fortuitous event, or case of force, was preceded by some fault of the debtor, without which the loss would not have happened.
Article 3556(15) defines a fortuitous event as "that which happens by a cause which we can not resist."
Article 2120 further provides:
The penalty being stipulated merely to enforce the performance of the principal obligation, it is not incurred, although the principal obligation be not performed, if there be a lawful excuse for its non-performance, such as inevitable accident, or irresistible force.
Excessive and unprecedented rainfall has been considered to be a fortuitous event to excuse the non-performance of a contract. Farnsworth v. Sewerage & Water Board of New Orleans, 173 La. 1105, 139 So. 638 (1932).
Plaintiff contends the trial court was in error in concluding defendant was prevented from performance by a fortuitous event for two principal reasons: (1) that defendant should have foreseen the probability of rainfall limiting the number of working days and (2) defendant compounded the problem by stopping up the drainage on the tract in his cutting of timber to which he gave priority.
The extent and frequency of rainfall as shown by the evidence was not reasonably foreseeable. The records of the Louisiana State University Experiment Station at St. Joseph located only eighteen miles from the property showed a total rainfall of 77.31 inches during 1975. The evidence shows this to be approximately 21 inches above the normal amount to be expected in this area, and that it was particularly excessive from April through October. This margin over normal rainfall when related to the low elevation of plaintiff's land supports the conclusion of the trial judge that performance of the contract by defendant was made impossible by a fortuitous event which was unforeseeable and was not a risk assumed by him under the contract.
The evidence on whether defendant damaged the natural drainage of the tract in cutting timber is conflicting. There is substantial evidence that the minimal drainage servicing the tract had been obstructed by prior timber cutting operations by other persons. The trial court did not find as a fact that defendant caused an impairment of the natural drainage which was the underlying cause of the continued wet and boggy condition of the low areas during the period of the contract.
These findings by the trial court are not clearly wrong and therefore should not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The remaining error complained of by plaintiff is the lower court's award of $3 per cord for the pulpwood removed and $35 per thousand feet for stumpage value of saw logs removed instead of the actual price received by defendant in the sale of these products.
In the absence of sufficient evidence to show the actual cost of cutting, hauling, and other related expenses in marketing the timber removed from the tract, we cannot say the trial court was in error in using as a basis for its award the minimum price provided by the contract for timber removed in the event of a default by defendant.
No manifest error having been shown in the findings of the trial court as set forth in its thorough written opinion in this matter, for the reasons assigned herein, the judgment is affirmed at appellant's cost.
NOTES
[1] This suit was consolidated with Louisiana Central Bank v. John F. Tillman in which judgment was rendered awarding the plaintiff-bank a $25,000 judgment against Tillman for his failure to pay the note in this amount given to secure funds placed in escrow on his behalf by the bank in connection with the subject clearing contract. No appeal was taken from that judgment.