BROWN, Chief Judge.
 

 | ,This matter comes before this court pursuant to a devolutive appeal. Plaintiffs, Juanita Louise Hays and William K. Hays, Sr., filed a medical malpractice suit against defendants, Christus Schumpert Northern Louisiana d/b/a Christus Schum-pert Health System and Dr. Deirdre Bar-field alleging negligence in the care of Mrs. Hays.
 
 [1]
 
 Plaintiffs now appeal from a trial court judgment and jury verdict in favor of defendants. For the following reasons we AFFIRM.
 

 Facts and Procedural History
 

 On June 14, 1999, Juanita Louise Hays was admitted into Christus Schumpert by her treating physician, Dr. Deirdre Bar-field. Mrs. Hays complained of abnormal weight loss, nausea, vomiting, diarrhea and weakness.
 
 [2]
 
 After Mrs. Hays’ admission, Dr. Barfield ordered intravenous (IV) fluids, laboratory work, a gasteroenterolo-gy consultation, various radiological tests and medications. Later that evening, incorrect laboratory data was reported to Dr. Barfield showing that Mrs. Hays’ blood glucose level was greater than 200. Dr. Barfield instructed nurses to monitor the patient’s blood glucose level by taking a “one touch” every six hours. She also issued orders for sliding scale insulin and for Mrs. Hays’ IV fluids to be changed.
 
 [3]
 

 |2A11 of the “one touch” readings taken overnight revealed blood glucose levels below the threshold for administering insulin, and the nurses caring for Mrs. Hays testified at trial that no insulin was administered to her. The following morning, Dr. Barfield was given the correct laboratory
 
 *959
 
 data, showing a lower blood glucose level. Dr. Barfield then ordered the IV fluid adjusted, noting that the patient had suffered no adverse effects for the delay in changing IV fluids, and she kept the sliding scale insulin order in effect.
 

 On the morning of June 15, 1999, an Esophagogastroduodenoscopy (EGD) was performed on Mrs. Hays. While in the endoscopy lab the patient suffered an episode of hypotension, hypoxia, and hypoglycemia, and her blood glucose level fell to 32. She recovered and was discharged back to her room, where blood glucose level measurements were normal. Testimony was offered that no insulin was administered to Mrs. Hays during her time in endoscopy.
 

 Upon her return to the floor, Mrs. Hays’ health continued to deteriorate. On June 16, 1999, Dr. Barfield ordered that Mrs. Hays be transferred to the Intensive Care Unit (ICU) for closer monitoring.
 
 [4]
 
 While in the ICU, Mrs. Hays became confused and combative. Dr. Barfield ordered soft restraints on June 19, 1999, to prevent Mrs. Hays from removing her oxygen mask and pulling out her IV lines. On the morning of June 20, 1999, Mr. Hays approached the nursing staff with concerns about his wife’s restraints and requested that they be removed. The primary care |Rnurse removed the restraints, but explained that Mr. Hays would have to remain with his wife to prevent her from removing her IV lines and oxygen support.
 

 At approximately 9:25 A.M., a conference took place with Dr. Barfield, Mr. Hays and Mrs. Hays’ primary care ICU nurse, Ann Bolden, being present. Dr. Barfield reiterated that either Mr. Hays, another family member or a sitter would need to remain with Mrs. Hays, or she would have to be restrained. Mr. Hays was emphatic that someone would remain with Mrs. Hays at all times. Dr. Barfield did not write down her order at that time. When asked by a nurse about any restraint orders, Dr. Barfield gave a verbal order for “soft restraints, PRN” which was recorded.
 
 [5]
 

 Also during the conference, Mr. Hays expressed that he would like his wife moved from ICU. Dr. Barfield felt that Mrs. Hays was improving physically, in spite of the agitation and confusion. She felt that these problems could be related either to the development of ICU psychosis or a bad reaction to Ativan. Dr. Bar-field decided that Mrs. Hays’ confusion might subside if she were placed on the general medicine floor instead of in the ICU. Mrs. Hays was transferred from the ICU to 9 Medical Tower later that day.
 

 Family members were present at the time that Mrs. Hays was received on the general medicine floor, and no restraints were applied. Family members remained with Mrs. Hays until sometime between 6:15 P.M. and |46:30 P.M. when Mr. Hays left the hospital.
 
 [6]
 
 At 6:15 P.M. the nurse
 
 *960
 
 on duty noted that Mrs. Hays was resting quietly and breathing easier. At 6:30 P.M., Mrs. Hays was found sitting unattended in a chair with decreased respiration. Her central line and oxygen mask had been removed. A Code Blue was called, and Mrs. Hays was resuscitated. She was then transferred back to the ICU and placed on a ventilator. Mrs. Hays was subsequently taken off of the ventilator and transferred to Dubuis Hospital on July 12, 1999, for rehabilitation. Mrs. Hays was discharged to her home on August 31, 1999.
 

 Mr. and Mrs. Hays filed this matter with the Louisiana Patient’s Compensation Fund in June 2000 seeking recovery for alleged damages arising out of medical treatment afforded to Mrs. Hays. On November 26, 2002, the Medical Review Panel evaluating the claim rendered an opinion in favor of all those against whom proceedings were instituted: Christus Health Northern Louisiana d/b/a Christus Schum-pert Health System (Christus Schumpert); Dubuis Hospital for Continuing Care, Dr. Deirdre Barfield, Dr. John Eric Bicknell and Dr. Walter Bound.
 

 In February 2003, Mr. and Mrs. Hays filed suit against Christus Schumpert and Dr. Barfield in the First Judicial District Court of Louisiana. On December 5, 2005, the trial court granted Christus Schum-pert’s motion for summary judgment. This court reversed that ruling and remanded this Lease to the trial court for further proceedings.
 
 Hays v. Christus Schumpert Northern Louisiana,
 
 41,271 (La.App.2d Cir.08/25/06); 939 So.2d 543. The suit was originally scheduled for trial by jury on August 27, 2007. A joint pretrial order was signed by counsel of record for all of the litigants; however, the trial was continued on multiple occasions. The suit proceeded to trial by jury on January 11, 2010, the Honorable Ramon Lafitte presiding. Following a three-week trial, the jury returned an 11-1 verdict in favor of defendants. A formal judgment in favor of defendants and against plaintiffs was signed by Judge Lafitte on March 22, 2010. Plaintiffs thereafter filed this appeal.
 

 Discussion
 

 Exclusion of Restraint Policy
 

 In their first assignment of error, plaintiffs argue that the trial court erred in refusing to allow into evidence Proffer-Plaintiffs’ Exhibit P-8, Christus Schum-pert’s patient care policy manual. The policy deals with “the proper use of restraints and/or seclusion for all Schumpert Health System patients.” Appellants point out that the policy provides, in part, that “PRN restraint and/or seclusion orders are prohibited and will not be used.” Appellants urge that if this policy had been admitted into evidence, the jury would have found that defendants breached the standard of care in their treatment of Mrs. Hays.
 

 At trial, plaintiffs attempted to introduce the restraint policy into evidence during direct examination of plaintiffs’ expert witness in nursing, Joanne Gongora. Dr. Barfield’s attorneys objected to the evidence, alleging |fithat they had not been provided a copy of the 14-page policy prior to trial.
 
 [7]
 
 Plaintiffs’ attorney represented that all parties had been sent a copy of the policy during a dispute over Christus Schumpert’s 2007 Motion in Limine to lim
 
 *961
 
 it the testimony of Nurse Gongora.
 
 [8]
 
 The policy was included, along with other Christus Schumpert procedures and policies, in Exhibit B of plaintiffs memorandum in opposition to Christus Schumpert’s motion. Counsel for Dr. Barfield explained that they had only received a facsimile copy of the memorandum itself in 2007. The trial court sustained the objection, stating:
 

 Indicating that she had not been provided with a copy. As I indicated yesterday, any document that was not exchanged amongst all counsel will not be admitted into evidence. So, I will sustain the objection made by Ms. Wiggins.
 
 [9]
 

 On appeal, appellants argue that, while not participating in the motion, counsel for Dr. Barfield was present when the trial court ruled on Christus Schumpert’s Motion in Limine. Appellants also note that Dr. Barfield was likely already in possession of the policy, as she was a practicing physician at Christus Schumpert at the time she treated Mrs. Hays. Counsel for Dr. Barfield still assert that they did not receive the exhibits by either certified mail or facsimile. Appellees do concede that 17when preparing for this appeal, they discovered that the policy had been filed into the record prior to trial.
 
 [10]
 

 Complaint of an alleged erroneous evidentiary ruling may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected. La. C.E. art. 103. The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of that discretion.
 
 Wimberly v. Giglio,
 
 46,000 (La.App.2d Cir.01/26/11); 57 So.3d 389;
 
 Graves v. Riverwood Intern. Corp.,
 
 41,810 (La.App.2d Cir.01/31/07); 949 So.2d 576, writ
 
 denied,
 
 07-0630 (La.05/04/07), 956 So.2d 621. On appeal, the court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. If not, reversal is not warranted.
 
 Id.
 
 The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case.
 
 Graves, supra.
 

 In determining whether the exclusion of the restraint policy had a substantial effect on the outcome of trial, we must first examine the policy itself. Appellants urge that the policy prohibits orders for PRN restraints, and if it had been followed, Mrs. Hays would not have been able to climb out of bed and remove her oxygen and IV lines. Defendants argue that the exclusion of the policy was harmless because neither Dr. Barfield nor Christus Schumpert violated the policy. The policy provides, in pertinent part:
 

 Ut is the policy of this Schumpert Health System to provide the safest, most therapeutic and least restrictive environment for our patients. The use of physical restraints and/or seclusion requires a time limited order and documented clinical justification to protect the patient and/or others from injury, or to prevent serious disruption of the therapeutic environment.
 

 The policy specifically requires a time limited order and documented clinical justification when physical restraints are
 
 *962
 
 used. Despite the order for “soft restraints, PRN,” no restraints were used on Mrs. Hays from the time she was transferred out of ICU until after she was discovered alone and out of bed. Defendants contend that had physical restraints been used pursuant to a PRN order, then there would have been a violation of the policy. Further, there was testimony from defendants’ expert nursing witness, Beth Neidlinger, that had physical restraints been needed, the nurses on duty would be required to fill out a form restraint order sheet and contact Dr. Barfield, who would ultimately determine if restraints were to be used.
 

 Appellants argue that Mrs. Hays would have been restrained whether Mr. Hays had remained or left the hospital on June 20, 1999, had the restraint policy been followed. However, nothing in the policy suggests that the agreement between Mr. Hays and Dr. Barfield is prohibited. Further, nothing in the policy mandates when a physician must order restraints for any patient, or what options he or she must employ when treating a patient. The policy encourages providing “the most therapeutic and least restrictive environment for our patients.” Having a family member or sitter remain with a patient as an alternative to using physical restraints appears to fall under this directive.
 

 |aThe policy further provides that “the registered nurse is authorized to provide early release if the patient demonstrates a significant reduction in behavior that led to the use of restraint and/or seclusion.” Testimony was given by both Nurse Gon-gora and Nurse Neidlinger that the nurse on duty should have used her clinical nursing judgment in making a decision as to whether restraints were needed at the time. The nurse on duty, Rachel McGonthlin, testified that restraints were unnecessary in her judgment as long as a family member was present.
 

 Additionally, the Medical Review Panel examining this case did not find a breach in the standard of care regarding Mrs. Hays’ restraints. They opined on the subject of restraints, “the panel does not believe this has any relevance to her ultimate problems and no causation has been shown.”
 

 There was ample evidence put before the jury on whether Mr. Hays asked the nursing staff about a sitter and was given permission to leave, and the jury found in favor of defendants. Further, the exclusion of the policy has no bearing on the question of whether Mr. Hays was given permission to leave his wife unattended. Therefore, because of the nature of the policy itself and other evidence supporting the trial court’s judgment, we cannot say that exclusion of the restraint policy was persuasive to the outcome of the case such that the substantial rights of plaintiffs were affected by its improper exclusion.
 

 Grant of a New Trial
 

 Appellants next argue that, given that the restraint policy was not allowed into evidence, they should be granted a new trial because a | inmiscarriage of justice would occur if the judgment in favor of defendants is maintained.
 

 Louisiana law provides that a new trial shall be granted upon contradictory motion, when the verdict or judgment appears clearly contrary to law. La. C.C.P. art. 1972.1. The granting or denying of a motion for a new trial rests within the wide discretion of the trial court, and its determination should not be disturbed absent a clear abuse of discretions.
 
 Armstrong v. Horseshoe Casino,
 
 36,927 (La.App.2d Cir.03/05/03); 839 So.2d 1028;
 
 Burke v. Baton Rouge Metro Airport,
 
 97-
 
 *963
 
 0947 (La.App.1st Cir.05/15/98); 712 So.2d 1028.
 

 While appellants argue that the verdict appears contrary to evidence, a review of the record reveals that they did not make a Motion for a New Trial to the trial court following the jury reaching a verdict or the issuance of the formal judgment. Therefore, appellants’ argument on appeal is without merit.
 

 Review of Jury Verdict
 

 In their final assignment of error, appellants contend that the trial court erred in dismissing the case pursuant to the jury’s verdict. They argue that given the evidence presented to the jury and considering the jury’s lack of access to the restraint policy, their verdict was clearly wrong. Appellants ask this court to “set aside the jury verdict or grant a JNOV.”
 
 [11]
 
 We decline to do so.
 

 In The manifest error standard of review applies to review of medical malpractice cases.
 
 Jackson v. Tulane Medical Center Hosp. and Clinic,
 
 05-1594 (La.10/17/06); 942 So.2d 509;
 
 Wyatt v. Hendrix,
 
 43,559 (La.App.2d Cir.11/05/08); 998 So.2d 233. A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong.
 
 Stobart v. State Through DOTD,
 
 617 So.2d 880 (La.1993);
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989).
 

 In order to reverse a fact finder’s determination, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Stobart, supra.
 
 The appellate court must not reweigh the evidence or substitute its own factual finding because it would have decided the case differently.
 
 Pinsonneault v. Merchants and Farmers Bank & Trust Co.,
 
 01-2217 (La.04/03/02); 816 So.2d 270;
 
 Wyatt, supra.
 
 The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was an reasonable one.
 
 Stobart, supra.
 

 Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Rosell,
 
 549 So.2d at 844. Where there are contradictory expert opinions regarding compliance with the applicable standard of care, the appellate court is bound to give great deference to the conclusions of the trier of fact.
 
 Turner v. Stassi,
 
 33,022 (La.App.2d Cir.05/10/00); 759 So.2d 299;
 
 Pinnick v. Louisiana State University Medical Center,
 
 30,263 (La.App.2d Cir.02/25/98); 707 So.2d 1050.
 

 Physician Malpractice
 

 The plaintiff bears the burden of proving that a doctor committed medical malpractice.
 
 Wyatt,
 
 998 So.2d at 260. La. R.S. 9:2794 provides that to. establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the applicable standard of care; (2) a breach in the standard of care; and (3) a causal connection between the alleged negligence and resulting injuries.
 
 Medical Review Panel for Claim of Murphy v. Bernice Community Rehabilitation Hosp.,
 
 40,333 (La.App.2d Cir.10/26/05);
 
 *964
 
 915 So.2d 354,
 
 writ denied,
 
 05-2399 (La.03/17/06); 925 So.2d 549. Physicians are not held to a standard of absolute precision, rather, their conduct and judgment are evaluated in terms of reasonableness under the then existing circumstances.
 
 Id.
 
 The mere fact that an injury occurred does not raise a presumption that the physician was negligent. La. R.S. 9:2794(C).
 

 Hospital Malpractice
 

 Malpractice claims against a hospital are subject to the general rules of proof applicable to any negligence action.
 
 Moore v. Willis-Knighton Medical Center,
 
 31,203 (La.App.2d Cir.10/28/98); 720 So.2d 425. A plaintiff must prove that the defendant had a duty to protect against the risk involved, that the defendant breached its duty and that the plaintiffs’ injury was caused by the defendant’s conduct.
 
 Smith v. State, through Department of Health and Human Resources,
 
 523 So.2d 815 (La.1988);
 
 Moore, supra.
 
 | iaHospitals are held to a national standard of care. The locality rule does not apply to hospitals.
 
 Henderson v. Homer Memorial Hospital,
 
 40,585 (La.App.2d Cir.01/27/06); 920 So.2d 988,
 
 writ denied,
 
 06-0491 (La.05/05/06); 927 So.2d 316. Hospitals are bound to exercise the requisite amount of care toward a patient that the particular patient’s condition may require.
 
 Id.
 
 The mere fact that an injury occurs or an accident happens raises no presumption or inference of negligence on the part of the hospital.
 
 Galloway v. Baton Rouge General Hospital,
 
 602 So.2d 1003 (La.1992).
 

 It is well settled that a hospital is liable for its employee’s negligence, including doctors and nurses, under the re-spondeat superior doctrine.
 
 Benefield v. Sibley,
 
 43,317 (La.App.2d Cir.07/09/08); 988 So.2d 279,
 
 writs denied,
 
 08-2162, 08-2210, 08-2247 (La.11/21/08); 996 So.2d 1107, 1108. Nurses who perform medical services are subject to the same standards of care and liability as are physicians.
 
 Id.
 
 The nurse’s duty is to exercise the degree of skill ordinarily employed, under similar circumstances, by members of the nursing or health care profession in good standing in the same community or locality, along with his or her best judgment, in the application of his or her skill to the case. Little
 
 v. Pou,
 
 42,872 (La.App.2d Cir.01/30/08); 975 So.2d 666,
 
 writ denied,
 
 08-0806 (La.06/06/08); 983 So.2d 920.
 

 In this assignment of error, the only argument plaintiffs offer is that “on the face of Proffer-Plaintiffs’ Exhibit 8, any finding other than defendants breached the standard of care would be wrong.”
 

 |14At trial, appellants focused most of their efforts on proving that insulin was negligently administered to Mrs. Hays due to incorrect blood glucose levels reported to Dr. Barfield on June 14, 1999. They alleged that Mrs. Hays was given an uncharted dose of insulin during the period when Dr. Barfield ordered sliding scale insulin for Mrs. Hays or when Mrs. Hays was in endoscopy. Testimony was heard from the nurses who cared for Mrs. Hays that they did not administer any insulin during their shifts. Further, there was no administration of insulin charted in Mrs. Hays’ records. The Medical Review Panel which examined this case also rejected the contention that Mrs. Hays had been administered insulin.
 

 Testimony supporting plaintiffs’ theory was given by plaintiffs’ expert witness in pharmacy, Walter Pierron, who testified that he knew of nothing other than insulin which would have caused Mrs. Hays’ drop in blood glucose while she was in endoscopy on June 15. Plaintiffs’ expert witness in internal medicine, Murray Pizette, also testified that insulin could have caused the drop blood glucose levels. Dr. James
 
 *965
 
 Jackson, expert witness in internal medicine, explained that the episodes of low blood glucose experienced by Mrs. Hays were likely a result of abnormal liver function, malnutrition and possible infection. These conclusions were supported by the testimony of Dr. Daniel Moller, also an expert witness in internal medicine, who concluded the low blood glucose level suffered by Mrs. Hays in endoscopy was caused by reactive hypoglycemia.
 

 Plaintiffs also focused at trial on proving negligence regarding how Mrs. Hays was restrained outside the ICU on June 20,-1999. Plaintiffs | isargued that Dr. Barfield was negligent in ordering “soft restraints, PRN” and that poor communication among the nurses led to Mrs. Hays climbing out of bed and removing her IV and oxygen lines. They further alleged the nurse on duty told Mr. Hays that he could leave and then left Mrs. Hays unrestrained.
 

 On the issue of communication, Nurse Bolden testified that when she delivered Mrs. Hays from ICU to the general medicine floor, she made a verbal report to the receiving nurse regarding the restraint agreement. Further, the receiving nurse testified that she would have made a verbal report to Nurse McGonthlin containing that information at the end of her shift. Nurse Neidlinger testified that the use of verbal reports was customary and met the standard of care.
 

 Nurse Neidlinger also testified that Nurse McGonthlin should have used her clinical judgment in assessing whether restraints were necessary while Mrs. Hays was on the general medicine floor. Nurse Gongora. felt similarly that Nurse McGonthlin could use her clinical judgment in the assessment whether to use restraints, though she felt there was a violation in the standard of care. Nurse McGonthlin testified that she felt restraints were unnecessary while family was in the room.
 

 As explained above, the restraints policy does not prohibit the agreement between Mr. Hays and Dr. Barfield that a family member or sitter must remain with Mrs. Hays or physical restraints would have to be used. Key to this dispute at trial was Mr. Hays’ allegation that he spoke with the nursing staff about leaving and obtaining a sitter for his wife. Mr. Hays 11Rmaintained that Nurse McGonthlin gave him permission to leave without obtaining a sitter. Nurse McGonthlin testified that she would not have told Mr. Hays that he could leave the hospital with his wife unattended. Defendants argue that the jury’s verdict is supported by Mr. Hays’ inconsistent testimony about the events of June 20, 1999. Defendants also note that the Medical Review Panel found that neither Dr. Barfield or Christus Schumpert violated the standard of care in their management of Mrs. Hays restraints.
 

 Given the ample medical evidence and testimony adduced at trial, we cannot say the jury’s verdict lacks a reasonable factual basis. Therefore, it is not manifestly erroneous or clearly wrong.
 

 Conclusion
 

 For the reasons set forth above, the judgment of the trial court is affirmed. Costs of appeal are assessed against appellants.
 

 AFFIRMED.
 

 [1]
 

 . Juanita L. Hays died on August 15, 2005. The action was thereafter amended to add her son, William Hays, Jr., as a party plaintiff.
 

 [2]
 

 . Mrs. Hays was 67 years of age at the time of her admittance. She had previously been admitted to Christus Schumpert in December 1998 for evaluation and treatment of acute renal failure. Dr. Barfield treated Mrs. Hays on February 3, 1999, and May 26, 1999, for problems related to this condition and other issues such as chronic kidney, bladder and upper respiratory problems, among others. Mrs. Hays was noted to have smoked two packs of cigarettes a day since the age of 18.
 

 [3]
 

 .Sliding scale insulin conditions the administration of insulin upon the particular patient's blood glucose level. If the patient’s blood glucose level was measured to be between 81-180, no treatment was to be performed.
 

 [4]
 

 . Also, on this date, Mrs. Hays’ chest x-ray showed bilateral infiltrates consistent with possible pneumonia. She was started on an antibiotic and Ativan was prescribed for the agitation.
 

 [5]
 

 . PRN or
 
 pro re nata
 
 is a Latin phrase meaning "as the circumstance arises.” It is commonly used in medicine to mean "as needed” or "as the situation arises.” Dosage or frequency is not scheduled. The nurse or caregiver is, instead, to administer treatment when necessary.
 

 [6]
 

 .There was a factual dispute as to why Mr. Hays left his wife’s bedside. Plaintiffs maintain that Mr. Hays inquired about finding a sitter for Mrs. Hays, and the nurse on duty told Mr. Hays it would be all right for him to leave Mrs. Hays without a sitter. The nurse on duty testified that she would not have told Mr. Hays a private duty sitter was unnecessary and that it was all right for him to leave
 
 *960
 
 the hospital. Mr. Hays testified that he left the hospital “about 6:30.”
 

 [7]
 

 . Counsel for Dr. Barfield also objected on the ground that the nursing expert was not qualified to testify about a policy for physicians. The trial court did not rule on the merit of this objection.
 

 [8]
 

 . Counsel for Dr. Barfield did not participate in this motion.
 

 [9]
 

 . The incident to which the trial court referred involved Plaintiffs’ attempt to introduce various medical records that defense counsel had received in part. The trial court allowed into evidence only the records which all parties possessed.
 

 [10]
 

 .Plaintiffs did not raise this issue when the matter was argued before the trial court.
 

 [11]
 

 . La. C.C.P. art. 1881 provides that a motion for judgment notwithstanding the verdict must be made no later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Art. 1913. We note that appellants made no such motion to the trial court following notice of judgment.