MOORE, J.
| ]Dr. and Mrs. Won Suk Lee appeal a judgment based on a jury verdict that awarded them $250,000 in repair or replacement cost under the New Home Warranty Act (“NHWA”), La. R.S. 9:3141-3150, less $83,338 for the balance due on the building contract, and denied their claim for delay damages for late completion of the house. The Lees contest one evidentiary ruling of the district court and the jury’s failure to award delay damages. For the reasons expressed, we affirm.

Factual and Procedural Background

Dr. Lee is an OB-GYN in Monroe; his wife, Kathryn, is a chemist and now a full-time homemaker. Largely on the strength of Joe Holyfield’s (hereinafter “Holyfield”) reputation for building doctors’ homes, in December 2005 the Lees contracted with Holyfield to build them a custom 5,484 sq. ft. (7,600 sq. ft. under the roof) house on an 8-acre tract on Heron Trail in West Monroe. The contract price was $1,132,114 and the completion date was to be November 30, 2006.
Ms. Lee was intensely interested in the construction process, usually visiting the site daily and prompting many change orders. With these changes, the final price rose to about $1.3 million. The house was not ready on November 30, 2006; Holy-field ascribed the delay not to the plethora of change orders but to abnormally wet weather in early 2006.
The Lees moved in on April 4, 2007. Within weeks Ms. Lee began to notice a stale, musty odor, chiefly in the master bath and closet. By early July she spotted “strings of green stuff,” which she reported to Holyfield; two of his workers came out and sprayed the area with bleach. This, 12however, did not abate the problem, and Ms. Lee complained that Holyfield avoided her calls and generally stalled for most of July. The Lees hired an engineer, a home inspector and an industrial hygienist who turned up a host of deficiencies: they compiled a punch list with 44 complaints. Concerned about the possible effect of mold on Ms. Lee and their two daughters, the Lees moved out on September 14, 2007. The house has been vacant ever since.
The Lees filed this suit under NHWA in November 2007. They alleged that the moisture and mold problem, plus myriad other defects, made the house uninhabitable. Holyfield conceded that various items were indeed defective, but maintained that he could repair them if only the Lees let him.
The case proceeded to a six-day jury trial in November 2010. The evidence was extremely detailed, as the Lees, Holyfield and their respective experts discussed all 44 items on the punch list. The Lees’ expert contractor, Warner, testified that repairs would cost at least $525,000; Holy-field and his expert environmental engineer, Dowling, estimated that repairs and mold remediation would not exceed $47,500. The Lees admitted that they never paid Holyfield his final $83,338 draw. Dr. Lee testified that at one point he asked Holyfield to buy back the house for $1.3 million, if the problems could be so easily addressed, but he declined; Holy-field conceded at trial that he could not afford to buy the houses he built.
Is Overview of Trial Evidence
Because the issue on appeal is an evi-dentiary ruling, this court will not belabor the profuse evidence covering all aspects of the trial. The only issue germane to the appeal is the brick. Prior to construction, Holyfield drove Ms. Lee around to various buildings in Monroe, showing her exterior brick. Their testimony differed, but Ms. Lee’s choice, either suggested or merely approved by Holyfield, was an an *870 tique, sun-dried, southwestern-style brick that everyone agreed was artistically striking. Unfortunately, this style of brick is much more porous than modern, kiln-baked brick, and was unsuited to the Lees’ house, in which one wall was partially submerged into the slope of the terrain. The Lees’ experts also testified that workers improperly applied mortar on the corner joints, left inadequate space (a vapor barrier) between the brick and wallboard, improperly installed flashing at the base of the walls and around the windows, and failed to install “weep holes” in the walls. Because of these deficiencies, rainwater constantly soaked into the west wall and could not escape, leaving the interior wall damp and prone to mold. At trial, Holy-field admitted that the brick had to be removed and replaced with a modern brick.
About two weeks before trial (and after discovery deadlines had run) another round of heavy rain pelted the area; the Lees argued that on a check of the vacant house, they discovered, for the first time, a puddle of water in a closet by the west wall. They got their new contractor, Warner, to remove all the exterior brick from the west wall; they argued that this was to pinpoint the cause of the problem. Holy-field, however, argued that the Lwater situation was “staged,” primarily so the jury would think the house was not substantially complete and the contract never fulfilled.[1] Holyfield moved to exclude any testimony concerning what Warner found when he removed the bricks.
The district court granted Holyfleld’s motion, noting that the Lees provided no reports to the defense, and that allowing expert testimony at that late date would amount to “trial by ambush.” On the final day of trial, the jury toured the house, but the court admonished them that the wall had been only recently removed. The Lees’ experts were not permitted to testify about what they just recently found inside the wall.

Verdict and Judgment

In response to special interrogatories, the jury found the house was defective because Holyfield failed to comply with building standards; repair or replacement cost was $250,000; the Lees failed to make reasonable efforts to mitigate the damage; the house was not substantially complete by November 30, 2006; even though completion did not occur until April 4, 2007, the Lees sustained no damages for late completion; the Lees sustained no nonpe-cuniary damages; and the Lees still owed Holyfield the final $83,338 payment.
Judgment was rendered in accordance with these findings. The judgment also incorporated posttrial rulings assessing expert witness fees of $6,250, incidental costs of $700 and attorney fees of $24,000.
[aThe Lees have appealed, raising two assignments of error.

Discussion: Evidentiary Ruling

By their first assignment of error, the Lees urge the district court erred in refusing to permit testimony concerning what was revealed by the removal of brick in November 2010. They contend that they faced a dilemma when they discovered the puddle in the closet long after the discovery deadline had run: they had to decide whether to ignore the damage or try to discover its cause, and they chose the latter. They felt this was reasonable because res judicata would bar evidence of some other cause. Further, they show that they notified Holyfield’s counsel by email on November 6 and phone call on *871 November 8; Holyfield inspected the site on November 10; and they did not deny him the chance to be present when the brick was removed. They conclude that under these facts, the evidence was relevant under La. C.E. art. 402 and not unduly or unfairly prejudicial. They concede the trial court’s discretion in ruling on the probative value of evidence but maintain that this ruling resulted in gross unfairness and mandates a new trial.
Holyfield replies that the ruling was no abuse of discretion. The brick could have been removed much earlier, as the Lees owned and controlled the house, and the timing right before trial supports the court’s finding of “trial by ambush.” He also argues that the evidentiary ruling did not affect a “substantial right of the party,” under La. C.E. art. 103 A: the Lees already presented copious evidence of alleged defects in the brick wall, especially the porosity of the brick and the narrow vapor barrier, so any additional | ^findings from their llth-hour “destructive testing” were cumulative. Finally, he submits that the Lees failed to proffer the excluded evidence, and thus waived the right to complain on appeal. La. C.C.P. art. 1636; Hudspeth v. Smith, 42,647 (La.App. 2 Cir.11/7/07), 969 So.2d 793.
“Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. The district court has great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion. Medine v. Roniger, 2003-3436 (La.7/2/04), 879 So.2d 706; Hays v. Christus Schumspert Northern La., 46,408 (La.App. 2 Cir.9/21/11), 72 So.3d 955. On appeal, the court must consider whether the contested ruling was erroneous and whether the error affected a substantial right of the party. La. C.E. art. 103 A; Hays v. Christus Schumpert, supra. If not, reversal is not warranted. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Hays v. Christus Schumpert, supra.
We recognize the- competing claims of prejudice. The Lees alleged that they discovered the puddle of water on November 4 or 5, 2010, long |7after the discovery deadline and shortly after a pretrial conference in which the court agreed to let the jury tour the house. Sensing an opportunity to identify the cause of the leak, they wanted to take down the wall, and they notified Holyfield’s counsel of this several times before they proceeded. Ho-lyfield countered that allowing the jury to see the dismantled wall would create the impression that the house was not completed, and regardless of the rain event that caused this puddle, the Lees had had ample opportunity to examine or disassemble the wall before the eve of trial. On this record we do not find that the court abused its discretion in excluding the requested evidence. Although the Lees’ position may be perfectly sincere, we agree that given the timing, admitting this evidence would have created more prejudice for Holyfield than denying it would have for the Lees.
Moreover, the evidence concerning the defects in the bricks and the construction of the wall was prodigious. The Lees’ home inspector, Burroughs, used infrared *872 tomography to trace the sources of the moisture; he confirmed it was coming through the wall of the master bath and closet because there were no proper roll-out shields, taping on the substructures or flashing on the windows. Their expert in building code compliance, Morris, also testified that the flashing and mortar were improperly installed and the vapor barrier too small. Their expert in industrial hygiene, Grevemberg, confirmed that as early as July 2007 he found excessive moisture in the lower part of several walls. Their expert engineer and architect, Madden, also testified that the wall had no flashing or weep holes, thus allowing moisture to condense and create an environment for mold.
lsOn this showing, the jury found that the house was defective because Holyfleld failed to comply with building standards. The Lees have not shown that any further findings of defects, or new theories of how water entered the wall, would have added to their very comprehensive case of defect or the ultimate verdict. Simply put, we do not find that the exclusion of the new evidence could have had any substantial effect on the outcome of the case. Even if the ruling was error, reversal is not warranted. Hays v. Christus Schumpert, supra.
This assignment of error lacks merit.

Delay Damages

By their second assignment of error, the Lees urge the jury was manifestly wrong in finding that they suffered no damages for the delay in construction. They argue that the jury’s finding of a 125-day delay in completion is simply inconsistent with the denial of delay damages. They also show that Holyfield admitted that Ms. Lee’s numerous change orders did not cause the delay. They con-elude that the judgment should be amended to award construction interest from November 30, 2006, until April 4, 2007, which they calculate at $19,270.55.[2]
Holyfield responds that despite “considerable evidence,” the jury found that the Lees suffered no loss by delaying their move-in until April 4, 2007, and this finding is not clearly wrong.
If a builder violates the NHWA by failing to perform as required by the warranties of the Act, any affected owner shall have a cause of action | ¡¡against the builder for actual damages, including attorney fees and costs, arising out of the violation. La. R.S. 9:3149. Actual damages include losses for undue hardship and delay. Cosman v. Cabrera, 2009-0265 (La.App. 1 Cir.10/23/09), 28 So.3d 1075. The obligor is liable for damages caused by his own delay. La. C.C. art. 1874. Excessive rainfall has been held to excuse the delayed performance of a building contract. Davis v. Tillman, 370 So.2d 1323 (La.App. 2 Cir.1979), and citations therein. Change orders have also been held to excuse delay. King Bros. Bldg. Contractors v. McCullen, 393 So.2d 413 (La.App. 1 Cir.1980).
Holyfield conceded that the house was not finished on time and that much of his work was defective. However, he also testified that the winter and spring of 2005-2006 were “extremely wet,” resulting in delays of “as much as a month” between February and April. While he diplomatically stated that he could not recall how many change orders he received, Ms. Lee acknowledged placing some 35-36 of these. She also described visiting the site virtually every day and taking active interest in every aspect of construction, facts which the jury could have viewed as tending to impede progress. On this record, the jury was entitled to find that the 125-day delay *873 did not primarily result from Holyfield’s failure to perform the contract. We perceive no manifest error, and this assignment lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed at the Lees’ cost.
AFFIRMED.

. A finding that the house was never completed would remove the limited liability of NHWA. See Thorn v. Caskey, 32,310 (La.App. 2 Cir. 9/22/99), 745 So.2d 653.

. The Lees concede that the figure listed in Exhibit P-43, $19,733.05, is erroneous.