Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,395-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHARLIE RAMON TERRY                    Plaintiff-Appellant

versus

BRITTNEY NICOLE PAGE                   Defendant-Appellee

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20182431

Honorable Daniel Joseph Ellender, Judge

* * * * *

RICK LANE CANDLER                      Counsel for Appellant

NANCI S. SUMMERSGILL                   Counsel for Appellee

* * * * *

Before STONE, COX, and McCALLUM, JJ.

**STONE, J.**

In this child custody dispute, the father, Charlie Ramon Terry ("Mr. Terry"), appeals the trial court judgment awarding joint custody of their minor son, Q.H.P., and designating the mother, Brittney Nicole Page ("Ms. Page"), as the domiciliary parent. For the following reasons, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The parties were never married, and began having an affair that spanned over five years, producing their son Q.H.P.; born October 28, 2013. When the parties initially met, Ms. Page was a college sophomore at University of Louisiana at Monroe and worked as a waitress at the restaurant Outback Steakhouse. At that time, Mr. Terry, the restaurant's general manager, was married with two children. For the entirety of Q.H.P.'s life, up to this point, the parties have willingly shared biweekly custodial periods and care-related expenses without a court order.

On July 20, 2018, Mr. Terry filed a "Petition for Joint Custody" arguing that he is better suited to provide for Q.H.P.'s needs pursuant to the factors listed in La. C.C. art. 134. His petition contained a litany of allegations, including that Ms. Page:

- Has frequently moved residences since giving birth to Q.H.P;
- Has had several failed relationships with different partners, and entered into a marriage with a same-sex partner which was terminated less than a year later;
- Has experienced several periods of unemployment since Q.H.P.'s birth; and
- Has abruptly moved out of the state of Louisiana to Virginia Beach, VA to pursue a relationship with a romantic partner and left Q.H.P. in his care.

\*\*\*

Ms. Page filed her answer on September 11, 2018, denying the allegations, arguing that Mr. Terry's own excessive alcohol and illegal drug

consumption, as well as numerous affairs with other women, call his own parental fitness in to question. She further explained that her reason for relocating to Virginia Beach, VA, was based in large part on more career opportunities for herself, and a better school system and more educational opportunities for Q.H.P. She contends that Mr. Terry tacitly agreed to allowing Q.H.P. to relocate with her based on their text message exchange. The parties went before Hearing Officer Vicki L. Green ("Officer Green") on September 26, 2018 ("September HOC"). After the conference, Hearing Officer Green issued her Hearing Officer Conference Report ("HOCR") recommending an award of joint custody with Mr. Terry designated as the domiciliary parent.

Ms. Page fax-filed her timely objections to the HOCR with the clerk of court on October 2, 2018. The record indicates that a copy of Ms. Page's objections were also faxed to Mr. Terry's attorney on that same day. Because Hearing Officer Green failed to receive a copy of Ms. Page's objections, the trial court was unaware of them, and rendered its judgment on October 5, 2018 ("October 5th judgment"), adopting the recommendation of the HOCR. Notice of this judgment was mailed by the clerk of court on October 22, 2018. However, on October 17, 2018, the trial court issued an order vacating the October 5th judgment, including the following recordation:

> Subsequent to the rendition of said Hearing Officer Conference Report, counsel for Defendant filed an Objection but failed to provide the Hearing Officer with a copy as provided by Court rules. A Judgment was thereafter done, adopting the Hearing Officer Conference Report. Said judgment was rendered in error, due to said counsel's failure to comply with Court rules. At this time, the Court, on its own motion, vacates the previous Judgment dated October 5, 2018. Accordingly: IT IS HEREBY

> ORDERED that the Judgment dated October 5, 2018 is vacated and without effect.

***

Mr. Terry filed his response to Ms. Page's objections on October 31, 2018, and the trial court set a bench trial on Ms. Page's objections for May 30, 2019. On February 2, 2019, Ms. Page filed an "Amended Answer and Reconventional Demand" notifying the trial court that she was gainfully employed, had permanently relocated back to the state of Louisiana since the hearing officer conference in September of 2018, and like Mr. Terry, also sought designation as the domiciliary parent.

The bench trial took place on the days May 30, 2019, and June 20, 2019, where a total of five witnesses, including both parties, testified and 12 exhibits were admitted into evidence. On July 18, 2019, the trial court handed down its ruling from the bench, accompanied with reasons, awarding the parties joint custody, with Ms. Page designated as the domiciliary parent. Mr. Terry filed this devolutive appeal asserting four assignments of error.

**DISCUSSION**

*Vacating October 5, 2018 Judgment*

By his first assignment of error, Mr. Terry argues that the trial court erred by vacating the October 5th judgment adopting and implementing the hearing officer's findings. He contends that because the October 5th judgment was a valid final judgment, the trial court did not have the authority to vacate it, and the only procedural remedies available are a motion for new trial or appeal.

A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final. La. C.C.P. art. 1841. A judgment that determines the

3

merits in whole or in part is a final judgment.  The award of custody is a final judgment even though it may be altered after a material change in circumstances.  *Lawson v. Lawson*, 48,296 (La. App. 2 Cir. 7/24/13), 121 So. 3d 769.

On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation.  La. C.C.P. art. 1951.  Article 1951 contemplates the correction of a "clerical error" in a final judgment, but does not authorize substantive amendments.  *Bourgeois v. Kost*, 2002-2785 (La. 5/20/03), 846 So. 2d 692.  Thus, the judgment may be amended by the court where the amendment takes nothing from or adds nothing to the original judgment.  *Villaume v. Villaume*, 363 So. 2d 448 (La.1978).  The proper recourse for an error of substance within a judgment is a timely application for new trial or a timely appeal.  *LaBove v. Theriot*, 597 So. 2d 1007 (La. 1992); *Hebert v. Hebert*, 351 So. 2d 1199 (La.1977).

A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for re-argument only.  If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues.  La. C.C.P. 1971.  When a court grants its own motion for a new trial, it must be done within seven days of the mailing of the original judgment.  *First Bank & Tr. v. Fitness Ventures, L.L.C.*, 2017-0475 (La. App. 1 Cir. 12/6/17).

A careful examination of Louisiana jurisprudence reveals that courts have allowed substantive revision and/or amendments in limited circumstances in order to accurately reflect the true intentions of the trial

4

court's disposition of a matter previously before them. The issue of whether the trial court has the authority to correct its own inadvertent errors was a matter of first impression considered by the Louisiana Supreme Court in *State v. Williams*, 2001-0554 (La. 5/14/02), 817 So. 2d 40, where the Court held that a trial judge has the authority to correct "an obvious ministerial error" in order to reflect her true intentions with regards to the disposition of the matter.

In *State v. Williams, supra*, following a trial on the merits, the trial court found the defendant guilty as charged of second-degree murder. At the sentencing hearing, the defendant filed his motion for new trial in open court, and the trial judge stated that she would take the motion for new trial "under submission." Immediately thereafter, the trial judge sentenced the defendant to life in prison without benefits. Later that same day, the trial judge inadvertently signed an order granting the defendant's motion for new trial.

This fact was unknown to all parties involved, as the defendant also filed a motion for appeal that was also granted by the trial judge. On appeal, the Fifth Circuit discovered the inadvertent, erroneous order granting the defendant's motion for new trial and ordered the parties to show cause why the appeal should not be dismissed. The trial judge, *sua sponte*, tendered her own response to the appellate court, explaining that the defendant's motion for new trial was granted in error and was "hereby denied." On writ of certiorari, the Louisiana Supreme Court found that the trial judge's true intentions to deny the defendant's motion for new trial were extremely apparent to all parties, as evidenced by the defendant's subsequent timely appeal.

5

Conversely, in *Bourgeois, supra*, the Louisiana Supreme Court considered the issue of whether the trial court has the authority to vacate a judgment, allegedly issued in error, and to subsequently issue a new judgment to reflect the court's true intentions. In *Bourgeois, supra*, following a trial on the merits, the trial court signed a document entitled "Defendants' Proposed Final Judgment," dismissing the plaintiff's claims. The clerk's office issued notice of judgment to both parties. Over two months later, the trial court signed a second judgment which ruled in favor of the plaintiff's claims accompanied with written reasons.

Three days after signing the second judgment, the court issued an order vacating the first signed judgment stating that said judgment was signed inadvertently. On appeal, the Fifth Circuit affirmed, and the Louisiana Supreme Court granted writs. In its analysis, the Court found that the analysis employed in *State v. Williams, supra,* was inapplicable, holding that the trial court's original judgment constituted a valid, final judgment, which precluded the trial court's subsequent amendments alleged to contain the court's intended disposition. Therefore, the second judgment is considered an absolute nullity. *See Bourgeois, supra.*

In *Horton v. Mayeaux*, 2005-1704 (La. 5/30/06), 931 So. 2d 338, the Court held that a district court has the authority to order a new trial on its own motion so long as the district court has continuing jurisdiction over the case because a party has filed a motion for new trial and/or a motion for a judgment notwithstanding the verdict ("JNOV").

Finally, in *Lousteau v. K-Mart Corp.*, 03-1182 (La. App. 5 Cir. 3/30/04), 871 So. 2d 618, *writ denied*, 2004-1027 (La. 6/25/04), 876 So. 2d 835, following a trial on the merits, the trial court entered a judgment in

favor of the defendant, dismissing the plaintiffs' claims with prejudice. Then, exactly one week later, the trial court, *sua sponte*, vacated the previous judgment, noting on the record that the first judgment was signed in error. Over a month later, the trial court rendered a second judgment in favor of the plaintiff along with written reasons for such. On appeal, the Fifth Circuit affirmed the second judgment finding the case distinguishable from *Bourgeois, supra*, in that the recordation on the order vacating the original judgment was within the time frame permitted pursuant to La. C.C.P. 1974.

Following our thorough review of the record, applicable law, and above-cited cases, we are fully persuaded that the trial court was within its discretion to vacate the October 5th judgment in favor of Mr. Terry, and proceed with a bench trial on the merits of Ms. Page's timely filed objections. We find that our present facts are both factually and procedurally distinguishable from *State v. Williams, supra*, and *Bourgeois, supra,* in several key ways; specifically, timing, procedural posture, and effect.

From a procedural viewpoint, in both *State v. Williams, supra*, and *Bourgeois, supra*, the parties had already conducted a trial on the merits **prior** to the discovery of the trial judge's inadvertent errors. In *State v. Williams*, *supra*, the trial judge's error was not discovered until over eight months later by the Fifth Circuit after the record had already been lodged. While *Bourgeois, supra*, the trial court signed two contradictory judgments **before** being apprised of their error, issuing an order vacating the first, erroneous judgment.

The matter *sub judice* is an initial custody determination, and parties only attended a single hearing officer conference prior to the erroneous October 5th judgment being issued. Unlike both *State v. Williams, supra*, and *Bourgeois, supra*, the record here clearly demonstrates that Judge Ellender discovered his own error, not this court, within the time frame to apply for a new trial. *See also Lousteau, supra*. Here, Judge Ellender signed the first judgment on October 5, 2018, and notice was not mailed until 17 days later on October 22, 2018.

We find the procedural posture of *Lousteau, supra*, most analogous to the instant appeal. Here, like the trial judge in *Lousteau, supra*, Judge Ellender vacated the October 5th judgment **before** issuing the second, October 17th judgment within the time frame for the parties to apply for new trial. Based on the trial record, the only notice of judgment was not mailed out until October 22, 2019. Since there is no evidence of an earlier notice of judgment, we reasonably infer the language contained in the October 17th judgment as a motion for new trial raised by the court, *sua sponte*.

In the interest of justice, we decline to employ a procedural rule which would create the indirect and unintentional effect of foreclosing Ms. Page's procedural, substantive, and fundamental rights. Accordingly, we find that Judge Ellender did not abuse his discretion by vacating the October 5th judgment and setting Ms. Page's objections for trial within the time frame of a motion for new trial permitted by law.

We also like to note that the explicit instructions and language included in the hearing officer conference report. An excerpt of the "Certification" section of the HOCR states:

8

> I hereby acknowledge receipt of a copy of the *Hearing Officer Conference Report/Recommendations* rendered on the date indicated hereinabove by the Hearing Officer, and that **I have five (5) days**, exclusive of weekends and legal holidays, **within which to file a written *Objection*** with the office of the clerk of court of this Parish, clearly listing those specific aspects of the *Hearing Officer Conference Report/Recommendations* to which I object.
>
> ***
>
> I further acknowledge that, in the event I do not file a timely written *Objection*, the *Recommendations* of the Hearing Officer may be adopted by the Court, upon the presentation of an appropriate *Judgment* by the Hearing Officer which will be issued by the Court which will be issued by the Court which adopts and implements the same, and makes it the order of the Court, without prior notice to any parties or counsel of record.
>
> ***
>
> I further acknowledge that, in the event I file a timely written *Objection*, I will provide a copy of same to all counsel of record and unrepresented parties, and the Hearing Officer, **at the same time and in the same manner** in which said objection was delivered to the Clerk of Court, or in a manner which the functional equivalent thereof; and that my *Objection* may be disregarded by the Court in the event I fail to provide copies to these individuals.
>
> ***

By the very printed, boilerplate language, signed by both parties' counsel of record, a party's failure to deliver a copy of objections to the hearing officer **does not** automatically preclude consideration by the trial court.  Per the HOCR, the only mandatory requirement is for the objecting party to file any objections within 5 days, exclusive of weekends and holidays, with the clerk's office.

*Plaintiff's Comedy Videos Admitted in to Evidence*

By his second assignment of error, Mr. Terry argues that the trial court erred in allowing a distorted comedy video originally posted on his personal Facebook page to be introduced into evidence and considered in its

9

ruling. Mr. Terry considers himself to be an amateur, part-time comedian and argues that the videos he creates and uploads on social media are for comedic purposes only. He further maintains under La. C.E. art. 403's balancing test, the prejudicial effect outweighs any of the video's probative value, and therefore, should have been excluded from evidence.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. The district court has great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion. *Medine v. Roniger,* 2003-3436 (La. 7/2/04), 879 So. 2d 706; *Farrar v. Centerpoint Energy Res. Corp.*, 52,557 (La. App. 2 Cir. 4/10/19), 269 So. 3d 1149, (La. 5/16/19); *Won Suk Lee v. Holyfield Const., Inc.*, 47,204 (La. App. 2 Cir. 6/20/12), 93 So. 3d 868; *Hays v. Christus Schumpert Northern La.,* 46,408 (La. App. 2 Cir. 9/21/11), 72 So. 3d 955.

On appeal, the court must consider whether the contested ruling was erroneous and whether the error affected a substantial right of the party. *See* La. C.E. art. 103 A; *Won Suk Lee, supra*; *Hays v. Christus Schumpert, supra.* If not, reversal is not warranted. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. *Won Suk Lee, supra*; *Hays v. Christus Schumpert, supra.*

In the matter *sub judice*, the trial transcript contains the following exchange:

MS. SUMMERSGILL: Your Honor, at this time I'd like to play a couple of these videos with the substance of what I'm talking about. I think it's really a statement against interest. If I can ask him one more question. Did you ever say on any of those tapes that as far as parenting you knew you wouldn't be any good at that?

MR. TERRY: If I said that, it was a joke. And look, I'm a great parent. I have two wonderful boys raised with no incident, a five-year-old that's happy as well. One has graduated college. Jokes are jokes. I don't know if you understand what comedy is. But I mean, comedy is not necessarily truthful.

THE COURT: Mr. Candler, what's your position with -- relative to her playing the video?

MR. CANDLER: Your Honor, I would object to any sort of video. I think the video takes the subject matter out of context. And I don't think it's necessary. He's already stated it was comedy.

THE COURT: Well, he may have. I mean, so what's your evidentiary objection to it?

MR. CANDLER: Well, --

THE COURT: It's not relevant?

MR. CANDLER: It's not relevant.

THE COURT: Certainly, it's potentially relevant. It depends on what weight the Court gives to it, understanding what his description was about the context…

***

THE COURT: All right. Mr. Terry, come back to the witness stand. All right. Sir, Mr. Candler, have you had an opportunity to view it?

MR. CANDLER: I have, Your Honor, and there are three videos. And the wording and the mouths don't match up. The words that's coming off the video and his lips are not the same.

THE COURT: They don't sync? Is that what you're saying?

MR. CANDLER: Yeah. They don't sync. Now, I'm not suggesting that they're doctored, but I would at least think at

11

the very least the words should match up with -- the lips should match up with the audio, and it doesn't do that.

THE COURT: Ms. Summersgill?

MS. SUMMERSGILL: It's a little synced off, Your Honor, but I would think that if this is these comedy tapes like Mr. Terry is saying they are, then he can deny he's saying anything. I mean, to me, they're -- you can easily tell from his motion in his lips what is being said.

THE COURT: All right. Well, I don't think that issue in and of itself would preclude the admissibility of them. It may certainly bear on the weight the court might give it.

***

Based on this exchange between the court and both parties' counsel, the trial court did not abuse its discretion in admitting the comedy videos in to evidence. We find that the basis of Mr. Terry's objection is rooted in fear of how the videos would be perceived by the trial court. However, he failed to articulate any objections explaining how any of the alleged and/or potential prejudice of his comedy videos is outweighed by their probative value of exposing potentially negative character traits which bear on the overarching inquiry of Q.H.P.'s best interest. Thus, we find that this assignment of error lacks merit.

*Trial court ruling in favor of Ms. Page*

By his third assignment of error, Mr. Terry argues that the trial court erred in ruling in favor of Ms. Page and against him. He argues that the overwhelming majority of the factors listed in La. C.C. art 134 favors himself, as opposed to Ms. Page.

The primary consideration in any child custody determination is the best interest of the child. La. C.C. art. 131. The court must consider all relevant factors in determining the best interest of the child. La. C.C. art.

12

134. Every child custody case should be decided in light of its own particular set of facts, circumstances and relationships. *See McCormic v. Rider*, 2009-2584 (La. 2/12/10), 27 So. 3d 277; *Atkins v. Atkins*, 47,563 (La. App. 2 Cir. 9/26/12), 106 So. 3d 614; *D.M.B.T. v. M.A.T.,* 46,381 (La. App. 2d Cir. 05/18/11), 83 So. 3d 3; *Shivers v. Shivers,* 44,596 (La. App. 2d Cir. 07/01/09), 16 So. 3d 500; *Bonnecarrere v. Bonnecarrere,* 11-0061 (La. App. 1 Cir. 07/01/11), 69 So. 3d 1225; *Earle v. Earle,* 43,925 (La. App. 2 Cir.12/03/08), 998 So. 2d 828, *writ denied,* 09–0117 (La. 02/13/09), 999 So. 2d 1151. The trial court has great discretion in this area, and its determination will not be disturbed in the absence of a clear abuse of discretion. *McCormic, supra*. A review of the trial court transcripts reveals the following oral reasons articulated by Judge Ellender where he spoke at great length regarding his decision, stating:

> …I looked through all of the factors of 134. Number one is the potential for abuse. I don't think that's at play in this case. The love and affection and emotional ties of each party and the child. I think you both love [Q.H.P.]. That's not an issue to me as well. The capacity and disposition of each party to give the child love, affection, and spiritual guidance and continue the education and rearing of the child. I believe that -- I believe that although you both have the capacity for love and affection, I believe that Ms. Page is the one in the better position to provide spiritual guidance and to continue the educational needs of [Q.H.P.] as evidenced by -- you know, she's already enrolled him, that she consistently brings him to church. Although, Mr. Terry does bring Q.H.P. to church, it's not on as consistent a basis as it appears Ms. Page did and/or professes that she will.
>
> Number four, the capacity and disposition of each party to provide the child with food, clothing, medical care and other material needs. I think both of you are in a good position to do that. The length of time the child has lived in a stable, adequate environment and the desirability of maintaining continuity of that environment. This likely is more in favor of Mr. Terry than Ms. Page as [Q.H.P.] -- as Mr. Terry has been in his home for I think some nineteen years. He's been in the same stable

environment with his wife and his other two boys and [Q.H.P.] at some point in time.

Although, Ms. Page does seem to have found herself a more stable environment, but it's living with her mama. You know, I don't know how long that going to last, but that's where she has been recently. I think unlike when it was in the hearing officer conference where she was in Virginia that she's moved back with the intent to remain because she believes she wants to be here with him.

Number six, the permanence as a family unit of existing proposed custodial home or homes. That kind of goes hand in hand with what I just said. The moral fitness of each party insofar as it affects the welfare of the child. Now, in terms of Ms. Page, in and out of various relationships, with not a lot of stability in that. However, this drinking and thinking is concerning, also the fact that, you know, both of you were involved in an extramarital affair to even -- to conceive this child.

The mental and physical health of each party. I don't have any evidence that there is any significant physical or mental issues with either one of you. Ten, home, school, and community history of the child. It seems like [Q.H.P.] has lived a significant amount of time with both of you. That prior to going to Virginia he was back and forth. Really the last year I guess before the Court's involvement he was primarily with Mr. Terry, particularly when Virginia happened. But before that, it seemed like there was fairly equal sharing between the two parties of him.

Reasonable preference of the child. He's too young for that. Willingness and ability of each party to facilitate and encourage a close, continuing relationship with the child and the other party. You know, this probably weighs in favor of Mr. Terry, based on Ms. Page going back and forth. However, I don't think it's clear in favor of either one.

The distance between the parties. We're talking about at this point Shreveport and Monroe. We've done it before. But the little difference then in the lasting responsibility for the care and rearing of the child previously exercised by the party, and I've already indicated that. The problem is that he's about to start school. He can't continue to do what's happened. I think if we could, I would just -- a shared relationship, but you can't because one is in Shreveport and one is in Monroe. And again,

14

> this is not an easy decision for the Court, but I do believe all the
> factors considered, the totality of the testimony, I believe that
> this would be long-term best for [Q.H.P.] …
>
> ***
>
> …I think -- Well, I believe -- I believe it's supported by the
> facts that long-term now, based on these factors, based on these
> circumstances, that I'm going to award the joint custody of
> [Q.H.P.] to the parties with Ms. Page being designated as the
> domiciliary parent.  And in terms of custodial visits, it's going
> to be every other weekend that Mr. Terry will receive.
>
> ***

With this in mind, we find the record absent of any evidence that the trial court abused its discretion in designating Ms. Page, rather than Mr. Terry, as the domiciliary parent.  While articulating oral reasons for judgment, it is apparent the trial judge carefully considered the all witness testimony, record evidence, and applicable law.  Therefore, this assignment of error is without merit.

*Relocation of minor child, Q.H.P.*

By his fourth and final assignment of error, Mr. Terry argues that the trial court abused its discretion in failing to properly address relocation issues and to apply the factors contained in La. R.S. 9:355.12, as well as the language used in *Moore v. Moore*, 47,947 (La. App. 2 Cir. 3/6/13), 111 So. 3d 1120.  However, we note that since Mr. Terry has instituted this custody suit and present appeal, Ms. Page has relocated to Shreveport, Louisiana, making this issue moot.  We thus pretermit ruling on whether the trial court abused its discretion in addressing relocation issues in this case.

## CONCLUSION

For the reasons articulated above, we affirm the judgment of the trial court awarding joint custody of Q.H.P. to the parties with the mother, Ms.

Brittney Nicole Page, designated as domiciliary parent. Costs of this appeal are assessed to the father, Mr. Charlie Ramon Terry.

**AFFIRMED.**