MOORE, J.
Foster Wheeler LLC appeals a jury verdict and JNOV that awarded the plaintiff, Lynda Berry, damages including $ 1 million in future medical expenses and found that certain other defendants were not responsible for the secondhand asbestos exposure that caused her mesothelioma. For the reasons expressed, we affirm.
FACTUAL BACKGROUND
Ms. Berry's husband, William Berry, worked at the West Monroe Paper Mill from 1961 until 2010 as an EI (electrical and instrumentation technician). He was present, in the mid-1960s, when the mill's owners contracted with Foster Wheeler, an engineering and construction contractor, to install two large boilers to generate electric power. These stood roughly five stories tall and were covered with insulation panels or custom-fitted insulating cement, all made of asbestos. Mr. Berry testified that his work as an EI exposed him to asbestos daily. In addition, the boilers were placed on staggered, annual "outage" for one or two weeks for inspection and repair; this required removal and reinstallation of the asbestos, a process performed by Foster Wheeler and described by Mr. Berry as spawning a dust storm inside the building. Mr. Berry testified that Foster Wheeler always performed this work, and was still doing so when he retired, in 2010.
Mr. and Mrs. Berry got married in 1973. He testified that he always wore his work clothes home in the evenings; Ms. Berry testified that his work clothes were generally caked with dust and dirt, and she washed, dried and folded them daily.
In early 2015, Ms. Berry started having stabbing pains in her stomach. She was diagnosed with mesothelioma, which doctors ultimately ascribed to her secondhand exposure to asbestos fibers on her husband's work clothes.
PROCEDURAL HISTORY
Ms. Berry filed this suit in August 2015, against 26 defendants. She settled with most of the defendants pretrial. She proceeded to a jury trial in April 2017, against two remaining defendants: Foster Wheeler, the general contractor, who designed, manufactured, installed and serviced the boilers, and J. Graves Insulation Co., a sub-subcontractor who supplied the asbestos insulation for the boilers.
At the start of trial, the court ruled that because most of Ms. Berry's exposure occurred before 1980, pre-Comparative Fault law would apply: each defendant found to be at fault would be responsible for a virile share of the total judgment. Jury selection *601 took two days. Then, over six days, Ms. Berry called 12 witnesses (some by video deposition) and introduced a large amount of documentary evidence. Shortly after she rested her case, Ms. Berry settled with J. Graves.
Over the next four days, Foster Wheeler called five witnesses (some by video deposition) and introduced its own large amount of documentary evidence. Closing arguments took nearly a full day.
The 12-member jury rendered a verdict that Ms. Berry had an asbestos-related injury; that Foster Wheeler's negligence was a substantial factor in her injury; that Foster Wheeler's products were unreasonably dangerous, not per se or because of their design, but because of a failure to warn of the hazards associated with asbestos; and that a nonparty defendant (Olin Corp., the former owner of the mill) was negligent in causing the injury and strictly liable as the premises owner.[1] The jury also found, however, that no other named defendants, including J. Graves, were negligent or provided an unreasonably dangerous product. The jury awarded Ms. Berry $ 1 million for past medical expenses and $ 2 million for future medical expenses, but nothing for physical pain and suffering, mental and emotional anguish, or loss of enjoyment of life. The court rendered judgment in favor of Ms. Berry and against Foster Wheeler for $ 1.5 million, reflecting Olin Corp's one-half virile share.
Both sides moved for JNOV. Ultimately, the district court granted Ms. Berry's motion by awarding her $ 3 million in general damages, an item the jury had inexplicably denied; granted Foster Wheeler's motion by reducing past medicals to $ 500,000 and future medicals to $ 1 million; and denied Foster Wheeler's motion by refusing to assign a virile share to J. Graves or to any other defendant who had settled pretrial or was exonerated by the jury. The court rendered final judgment in favor of Ms. Berry and against Foster Wheeler for $ 2.25 million, again reflecting Olin Corp's virile share.
Foster Wheeler has appealed, raising five assignments of error.
DISCUSSION
Liability of Other Defendants
By its first assignment of error, Foster Wheeler urges the jury erred in failing to find six entities who settled pretrial and one entity who settled midtrial, J. Graves, were liable for the plaintiff's injuries.[2]
Foster Wheeler shows that under pre-Comparative Fault law, a solidary obligor received a virile share credit when the plaintiff settled with and released a party and that party's liability was established at trial. Wall v. American Employers Ins. Co. , 386 So.2d 79 (La. 1980). Foster Wheeler also shows that Ms. Berry settled with, and received money from, seven entities who provided asbestos insulation to the boilers, and argues that Ms. Berry's own occupational medicine expert, Dr. Edwin Holstein, testified that all seven were substantial contributing causes to her disease. Foster Wheeler cites two asbestos cases, and one benzene case, in which juries exonerated settled defendants but the courts of appeal found manifest error and assigned *602 fault to them.[3] It contends that the evidence against the settling defendants was established by "undisputed fact." Specifically, GE installed turbines between the Foster Wheeler boilers and then engaged in much work that created asbestos dust; these facts were documented by a 1994 abatement record; and Dr. Holstein considered GE a substantial factor in Ms. Berry's disease. J. Graves was a "professional vendor and contractor" who supplied and installed the asbestos-containing insulation on the boilers; Mr. Berry keenly recalled inhaling dust from when J. Graves was installing or reinstalling insulation; and Dr. Holstein considered J. Graves a substantial factor in Ms. Berry's disease. As to the valve and pump defendants, Foster Wheeler submits that there were literally thousands of valves, pumps and pipes at the mill, all covered with asbestos packing material, gasket material and insulation, and all produced dust when handled; and Dr. Holstein felt the dust from all these sources was a substantial cause of Ms. Berry's illness. Foster Wheeler concludes that the jury's finding exonerating these defendants was plainly wrong, and that this court should assign seven virile share credits.
Ms. Berry agrees with the application of Wall v. American Employers Ins. Co. , supra , but argues that when a defendant urges the fault of a nonparty, that defendant must provide evidence "which preponderates that fault actually exists" on the part of that nonparty, Joseph v. Broussard Rice Mill Inc. , 2000-0628 (La. 10/30/00), 772 So.2d 94. She contends that remaining defendants often fail to prove the fault of a settling defendant.[4] She submits that Foster Wheeler simply failed to prove J. Graves's fault. Specifically, the only evidence of causation was from her own expert, Dr. Holstein, but he provided "no detail about the underlying basis" for his opinion; there was no evidence that GE supplied any asbestos materials to the mill; J. Graves was merely a subcontractor hired to do installation work; and the evidence against the valve and pump defendants was "insubstantial." She concludes the jury committed no manifest error.
The trier of fact's findings are reviewed under the plainly wrong/manifest error standard. Warren v. Shelter Mutual Ins. Co. , 2016-1647 (La. 10/18/17), 233 So.3d 568 ; BRP LLC (Delaware) v. MC La. Minerals LLC , 50,549 (La. App. 2 Cir. 5/18/16), 196 So.3d 37. Under this standard, if the trier of fact's findings are reasonable in light of the record viewed in its entirety, the appellate court cannot reverse even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Lomont v. Bennett , 2014-2483 (La. 6/30/15), 172 So.3d 620 ; Emerson v. Willis Knighton Med. Ctr. , 52,216 (La. App. 2 Cir. 9/26/18), 257 So.3d 243. Notably, the appellate court will avoid making "its choice of the evidence," and instead will look for clear error in the reasonable basis found by the *603 trier of fact. BRP LLC (Delaware) v. MC La. Minerals , supra , and citations therein.
The common standard of proof in civil cases is a preponderance of the evidence. Joseph v. Broussard Rice Mill , supra . A defendant must also meet this burden of proof if he asserts the fault of a nonparty. Id. ; State v. Cecil , 42,433 (La. App. 2 Cir. 9/19/07), 966 So.2d 131, writ denied , 2007-2063 (La. 12/14/07), 970 So.2d 536.
Foster Wheeler presented some evidence pertaining to GE: it played the video deposition of Vance Stark, the corporate representative for the mill's current owner, Graphic Packaging. He stated that until 1976 there were five power turbines between the boilers, all but one manufactured by GE; he referred to a 1994 work order for "removal of asbestos containing material" by GE, but testified that the mill had no record that GE ever provided any warnings about the dangers associated with asbestos. The bulk of the evidence, however, was presented by the plaintiff. Mr. Berry testified that GE installed six turbines, all insulated with asbestos; these were opened annually for maintenance, exposing the insides and releasing dust; he carried this dust home on his clothes. The plaintiff's occupational medicine expert, Dr. Holstein, who was on the stand for an entire day, intricately traced the history of asbestos studies, discussed Ms. Berry's medical results, and analyzed the physical components of the mill. On cross-examination, he testified that GE was a contributing factor to Ms. Berry's disease.
Foster Wheeler attempted to present some evidence pertaining to J. Graves: it introduced the video deposition of Dr. Thomas Howard, a pulmonologist, who also traced the history of asbestos studies and stated the view that the medical community did not fully appreciate the risk of secondhand asbestos exposure until about 1976. After the district court sustained Ms. Berry's objection, Foster Wheeler tendered additional portions of Dr. Howard's deposition to show that J. Graves was a union contractor subject to OSHA regulations on asbestos after 1971, that the union was aware of the hazards of asbestos, and this knowledge should be charged to J. Graves. Again, however, the bulk of the evidence was presented by Ms. Berry: she called Eddie Scott, J. Graves's corporate representative, who testified that his company installed insulation, including pipe coverings, at the mill, and that in the 1960s this was made of asbestos. Mr. Berry distinctly recalled that J. Graves installed the boilers, returned to the mill regularly to remove and reinstall it during outages, and that these operations created dust that he carried home on his clothes for Ms. Berry to wash. On direct examination, Dr. Holstein testified that J. Graves was a significant contributing factor in Ms. Berry's disease.
At first glance, it seems inconsistent for the jury to decide that Foster Wheeler, who installed and serviced the boilers, was liable, while GE, who installed and serviced the turbines, and J. Graves, who provided the asbestos insulation for the entire project, were not. On close examination, however, we cannot say this was plainly wrong. While the evidence against GE and J. Graves was significant, their input does not approach the long and intensive involvement of Foster Wheeler, as described by Mr. Berry and confirmed by Eddie Scott and Vance Stark. This disparity of proof may have led the jury to discount Dr. Holstein's rather blanket opinion that every entity that provided, installed or worked on asbestos in the mill was a substantial factor in Ms. Berry's disease. The jury could reasonably find a practical limit to various parties' liability, based on the length and kind of conduct *604 they engaged in. While this court might have cast the net of liability a little farther out than did the jury, we simply cannot say the jury abused its discretion. Moreover, we observe that most of the evidence against GE and J. Graves was offered by Ms. Berry, even though the burden was on Foster Wheeler to prove the fault of these nonparties, Joseph v. Broussard Rice Mill , supra ; State v. Cecil , supra .
As for the valve and pump defendants, Foster Wheeler introduced a copy of the 1964 piping specifications showing that all pipes in the project were to be insulated with 1 to 4½ inches of asbestos (with trade names like Thermobestos, Kaylo, Therma-K, Unibestos, etc.) and a copy of a 1974 approved valve list showing that all valves supplied by Crane would be insulated with one inch of finishing cement "made of asbestos fiber and suitable binding materials." Most of the evidence, however, was offered by the plaintiff: Mr. Berry testified that he worked on "thousands" of valves and pumps, made by Northern Pump Co., Warren Pumps, Goulds Pumps, Gardner Denver and Crane Co.; all of these were coated with asbestos packing material which generated dust whenever it was manipulated or removed; he sometimes, to get it off, he had to pound the insulation with a hammer, resulting in asbestos dust "like a sandstorm." Ms. Berry's expert, Dr. Holstein, also voiced the view that asbestos dust from each of these products was a substantial contributing cause of her disease.
In the context of this long trial and mountain of documentary evidence, the case against the valve and pump defendants really pales in perspective. The jury was called to decide what level of involvement was sufficient to create liability, and found that the smaller players did not reach that level. The jury may also have felt that Dr. Holstein's monolithic view of liability, while scientifically justified, was impractical. We cannot say that the verdict is an abuse of discretion. And, as with GE and J. Graves, we note that most of the evidence against the valve and pump defendants was actually adduced by the plaintiff, not by Foster Wheeler, the entity that owed the burden of proving the fault of settled parties. Joseph v. Broussard Rice Mill , supra ; State v. Cecil , supra . We find no manifest error.
This assignment of error lacks merit.
Exclusion of Evidence of Union Knowledge
By its second assignment of error, Foster Wheeler urges the trial court erred in refusing to allow it to present evidence of union knowledge regarding the hazards of asbestos. It established, through the testimony of Eddie Scott, J. Graves's corporate representative, that J. Graves was a union shop, and, through the cross-examination of Dr. Holstein, that J. Graves was subject to OSHA regulations by June 1972. After J. Graves settled midtrial, Foster Wheeler tried to offer the deposition of Dr. Howard, its expert pulmonologist, to state that J. Graves's union knew about the hazards of asbestos, and this knowledge should be charged to J. Graves. Ms. Berry objected, and the trial court sustained it, stating that there was no evidence that the union assumed the duty of workplace safety; Foster Wheeler proffered portions of Dr. Howard's deposition. The court also denied a post-trial motion on the issue.[5] Foster Wheeler contends this was error, and urges the standard of review is de *605 novo, Gonzales v. Xerox Corp. , 254 La. 182, 320 So.2d 163 (1975).
Ms. Berry responds that the standard of review for an evidentiary ruling is abuse of discretion, Won Suk Lee v. Holyfield Const. Inc. , 47,204 (La. App. 2 Cir. 6/20/12), 93 So.3d 868, not de novo. She submits that the excluded evidence would not have altered the verdict. She also contends that labor unions have no duty to warn their members about workplace hazards unless they have affirmatively undertaken this duty, United Steelworkers of Amer. v. Rawson , 495 U.S. 362, 110 S Ct. 1904, 109 L.Ed.2d 362 (1990), and no duty to search out workplaces for hazards associated with asbestos or other toxins, Doiron v. Southern Silica of La. , 613 So.2d 1064 (La. App. 3 Cir.), writ denied , 619 So.2d 546 (1993).
A ruling on the admissibility of evidence is a question of law and is not subject to the manifest error standard of review. Trascher v. Territo , 2011-2093 (La. 5/8/12), 89 So.3d 357, citing Frank L. Maraist, Evidence & Proof , 2 ed. (19 La. Civ. L. Treatise, Thomson West ©2007); Port City Glass & Paint Inc. v. Brooks , 52,534 (La. App. 2 Cir. 2/27/19), 266 So.3d 516. A party may not complain on appeal about an evidentiary ruling in the trial court unless the trial judge was given the opportunity to avoid the perceived error, and the ruling affected a substantial right of the party. Id. Nonetheless, a district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal absent an abuse of that discretion. Medine v. Roniger , 2003-3436 (La. 7/2/04), 879 So.2d 706 ; Won Suk Lee v. Holyfield Const. Inc. , supra . On appeal, the court must consider whether the contested ruling was erroneous and whether the error affected a substantial right of the party. La. C.E. art. 103 A; Won Suk Lee v. Holyfield , supra . If not, reversal is not warranted.
Specifically, the court excluded the fall 1971 copy of Insulation Hygiene Progress Reports , a publication of the Insulation Industry Hygiene Research Program, and a portion of Dr. Howard's deposition discussing the lead article therein. Foster Wheeler was allowed to introduce an earlier copy of Insulation Hygiene Progress Reports , spring 1969, which featured a long article about the first cooperative effort by labor unions, industry, scientists and the government to undertake health research for insulation workers; it quoted Dr. Irving Selikoff, a pioneer in asbestos research, as seeking to minimize exposure to dust and fumes. Foster Wheeler also introduced a copy of United Paper , a union publication, dated March 29, 1972, with an article headlined "Workers Face Death From Asbestos Dust" and quoting Dr. Selikoff. In addition, Dr. Holstein testified very expansively that knowledge of asbestos's hazards was readily available by 1964, from public libraries, Encyclopaedia Britannica , and on boxes of Johns-Manville insulation, one of the types used by J. Graves. In short, there was considerable evidence from which the jury could have found that the union representing J. Graves's employees had knowledge of the hazards of asbestos. Compared to the record as a whole, the later issue of Insulation Hygiene Progress Reports , and of the pulmonologist's commentary on it, cannot have had a substantial effect on the outcome of the case. Won Suk Lee v. Holyfield , supra . We perceive no abuse of the trial court's discretion.
This assignment of error lacks merit.
Automatic Virile Share for Settlement
By its third assignment of error, Foster Wheeler urges the district court erred in failing to allocate a virile share for the liability of J. Graves, who settled during *606 trial. Foster Wheeler contends that whenever a settlement is reached after the start of trial, the plaintiff's award must be reduced by the virile share of the settling defendant. Danks v. Maher , 177 So.2d 412 (La. App. 4 Cir. 1965) ; Raley v. Carter , 412 So.2d 1045 (La. 1982). This is because last-minute settlements impair a defendant's ability to prove the negligence of the settling defendant. Haney v. Francewar , 588 So.2d 1172 (La. App. 1 Cir. 1992).[6] Foster Wheeler argues that what happened here was unfair, as it had worked with J. Graves for the first two weeks of trial, conducting voir dire together and cross-examining six of Ms. Berry's witnesses in collaboration. Foster Wheeler concludes that the district court committed a legal error and that this court should amend the judgment to reflect J. Graves's virile share.
Ms. Berry responds that the essential question is whether Foster Wheeler presented competent evidence to prove that J. Graves was at fault, that the automatic virile share for settlement is "harsh," Raley v. Carter , supra , and that since Raley , no published opinion has ever relieved a defendant of the burden of proving the fault of a settling codefendant.[7]
In Danks v. Maher , supra , the plaintiff filed a medical malpractice suit against her doctor, the hospital and their respective insurers. After trial was almost completed but before the case was submitted to the jury, the plaintiff settled her claim against the doctor and his insurer, and those parties were released and dismissed, but she reserved her rights against the remaining defendants. The Fourth Circuit found that the dismissal of the doctor so near the end of trial unfairly shifted the burden of proving the released defendants' negligence from the plaintiff to the remaining defendants. The court therefore reduced the judgment rendered against the hospital by one-half.
In Wall v. American Employers Ins. Co. , supra , the plaintiff sued three defendants for the wrongful death of her daughter. She settled with two of the three pretrial, and proceeded to trial in which the negligence of the released defendants was litigated. The district court found that the evidence proved the fault of the released defendants but did not prove causation against the remaining defendant. On appeal, this court reversed, finding sufficient proof of the fault of the remaining defendant, but we reduced the award by two-thirds to reflect the virile share of the released defendants. On review, the Supreme Court affirmed our result, but held that it was based on the quality of proof introduced at trial, and not on an automatic reduction for virile shares.
In Raley v. Carter , supra , the plaintiff filed a personal injury suit against the job supervisor, safety officer, plant manager and project manager of the company to which his employer was under contract. On *607 the morning of trial, the plaintiff dismissed his claims against three of the defendants but reserved his rights against the job supervisor. At trial, neither the plaintiff nor the remaining defendant offered any evidence tending to prove or negate the liability of the released defendants. After judgment was rendered in the plaintiff's favor, the district court refused to reduce it by 75% to reflect the released defendants' virile shares, but the First Circuit granted this reduction, citing Danks v. Maher , supra . On review, however, the Supreme Court reinstated the district court's judgment, carefully discussing Danks and Wall , supra . The court's operative reasoning was as follows:
In the area of law considered in Danks v. Maher , supra , and Wall v. American Employers Insurance , supra , fairness to the defendant was of paramount importance. In order to claim contribution from a released tortfeasor, the remaining defendant will ordinarily be required to establish the negligence of the released defendant at trial. In cases where a plaintiff reaches settlement with one or more defendants well prior to trial, the remaining defendant is afforded ample opportunity to prepare to carry this burden of proof.
* * *
The result reached in Danks , supra , was harsh and its application should be strictly limited to cases in which settlement is reached only after the commencement of trial.
In light of the entire discussion in Raley , we do not consider the second paragraph, quoted above, as requiring the automatic imposition of virile shares any time the plaintiff settles with one codefendant after the start of trial. The linchpin is fairness to the remaining defendant. The Supreme Court noted in Raley that the remaining defendant failed to request a continuance or offer any evidence of negligence on the part of the released defendants; thus, he "cannot complain of a judgment finding them solely liable to plaintiff." The court also stated that to hold otherwise would seriously impair pretrial settlement negotiations. Finally, the court said it would not require a plaintiff "to prepare two cases, one to establish the negligence of all named defendants; the other (held in reserve) to establish the lack of fault of any defendant with whom the plaintiff may happen to compromise prior to trial."
In its oral ruling on Foster Wheeler's request for an automatic virile share for J. Graves's settlement, the district court showed an exemplary grasp of the operative reasoning of Raley , supra , and meticulously applied it to the facts of this case. The court first stated that Foster Wheeler had benefited from all the evidence that Ms. Berry marshalled against J. Graves during her case in chief, most notably, the testimony of J. Graves's corporate representative, Eddie Scott. The court then noted the "long weekend" between the settlement and the resumption of trial the following week, giving Foster Wheeler ample time to adjust its defense. Finally, the court found that the jury had been given the opportunity to find J. Graves at fault, under four different theories, and declined to do so. In our view, these considerations honor the objectives of fairness to the defendant, the encouragement of settlement discussions, and fairness to the plaintiff advanced in Raley . This court would merely add that after the settlement, Foster Wheeler did not object to resuming the trial or attempt to recall Mr. Scott for cross-examination. On appeal, Foster Wheeler does not allege any specific prejudice - what other evidence it would have offered, or other strategy it would have pursued, had J. Graves not *608 settled. We perceive no abuse of the district court's discretion. This assignment of error lacks merit.
Future Medical Expenses
By its fourth assignment of error, Foster Wheeler urges the jury erred in awarding future medical expenses, and the district court erred in not eliminating this award. As noted, the jury awarded future medicals of $ 2 million; on JNOV, the court reduced it to $ 1 million. Foster Wheeler argues that a plaintiff must show, more probably than not, that these expenses will be incurred, and must offer medical testimony that such expenses are indicated and setting out their probable cost. Hunt v. Long , 33,395 (La. App. 2 Cir. 6/21/00), 763 So.2d 811. It further argues that appellate courts have reversed or reduced such awards because of insufficient proof, Boothe v. New Orleans Publ. Serv. , 447 So.2d 620 (La. App. 4 Cir. 1984) ; Austin v. Pascarelli , 612 So.2d 201 (La. App. 3 Cir. 1992), writs denied , 614 So.2d 1256, 1256 (1993). Specifically, Foster Wheeler cites Ms. Berry's own admission, "I don't think I'm going to do that" and "I don't see the point in doing it," referring to a proposed 17-hour procedure to enter her abdomen and "debulk" numerous tumors. It also contends that Ms. Berry's own expert pathologist, Dr. Brent Staggs, was ambivalent about the costs, and her treating physician and oncologist in Monroe, Dr. Benjamin B. Weinberger, was indecisive about the need for, such surgery. Foster Wheeler concludes that the record falls short of meeting the standard of future medicals, and urges this court to render judgment deleting that award.
Ms. Berry submits that the award is not manifestly erroneous. She argues that the court should not reject an award of future medicals on the basis that the record does not provide the exact value of necessary expenses, if the record will support a minimum amount that reasonable minds could not disagree will be required. Stiles v. K Mart Corp. , 597 So.2d 1012 (La. 1992). She graphically relates the regimen of treatment she has already undergone, and suggests that Dr. Staggs's round estimate of $ 1 million to $ 3 million, and Dr. Weinberger's estimate of $ 1 million, for her future medical expenses fully support the award of the JNOV.
A tort victim may recover past and future medical expenses caused by tortious conduct. La. C.C. art. 2315 ; Menard v. Lafayette Ins. Co. , 2009-1869 (La. 3/16/10), 31 So.3d 996. A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. Id. Awards of future medicals generally do not involve determining amounts, but turn on questions of credibility and inferences, such as which side's experts and other witnesses the jury believes. Id. ; Shephard v. AIX Energy Inc. , 51,965 (La. App. 2 Cir. 5/23/18), 249 So.3d 194, writ denied , 2018-1266 (La. 11/5/18), 255 So.3d 1050. Future medical expenses must be established with some degree of certainty, but:
[w]hen the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required.
Stiles v. K Mart Corp. , supra at 1012 ; Cooley v. Adgate , 52,000 (La. App. 2 Cir. 5/30/18), 248 So.3d 753.
The judge's or jury's assessment of quantum, as a finding of fact, is entitled to great deference on review.
*609 La. C.C. art. 2324.1 ; Menard v. Lafayette Ins. Co. , supra . The standard of review is manifest error: an appellate court will reverse only if there is no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. Id.
Ms. Berry received her diagnosis of peritoneal mesothelioma in March 2015, at the age of 65. This disease is a cancer of the abdominal lining, often resulting in bowel obstruction (which had indeed happened to Ms. Berry, requiring surgery to resect and unblock her colon), kidney failure and death. Dr. Kanwal Raghav, Ms. Berry's treating oncologist at M.D. Anderson Cancer Center in Houston, testified that she had "a lot of disease in her peritoneum" and lymph nodes that were positive, making her not a candidate for surgery. For two years, she received chemotherapy, which seemed to keep the tumors in check, for a while, but this led to another hospitalization, for "rigors." Despite first-line chemo, the tumors resumed their growth and, in early 2017, Dr. Weinberger advised that she was now a candidate for surgery, with the alternative of continued chemotherapy. He testified that even without the proposed surgery, she was still at risk for bowel obstructions, which would require their own surgeries.
At trial, in early May 2017, Ms. Berry testified, regarding the proposed surgery, "I don't think I'm going to do that, because it's still a terrible surgery," "I'm not at all sure I'm going to do that," and "I don't see the point in doing it."
The jury listened to the abundant evidence and obviously discounted Ms. Berry's protestation that she would not submit to the proposed surgery. In light of the severity and inevitable advance of the disease, it was not unreasonable for them to find that she would ultimately elect to have it. As noted, such a decision turns on questions of credibility and inferences. Menard v. Lafayette Ins. Co. , supra ; Shephard v. AIX Energy , supra . If the showing of medical necessity is strong, the fact finder may discount the plaintiff's reluctance or refusal to undergo a stated medical procedure. Melancon v. Lafayette Ins. Co. , 2005-762 (La. App. 3 Cir. 3/29/06), 926 So.2d 693, writs denied , 2006-0974, -1006 (La. 6/16/06), 929 So.2d 1291, 929 So.2d 1293. We perceive no manifest error in the jury's finding that future medicals would probably be incurred.
As to quantum, the expert testimony was somewhat speculative. Dr. Staggs admitted, "We don't know exactly," and offered, "One, two, three million dollars." Dr. Weinberger, discussing Ms. Berry's overall outlook, testified, "If she is hospitalized for any complications, you're talking * * * maybe over a year, two, three years, like I suggested, close to a million dollars. This is just off the top of my head." Notably, Foster Wheeler introduced no expert medical or economic evidence showing that a smaller amount would likely cover her anticipated future medical expenses, as was done in Shephard v. AIX Energy , supra . While more concrete estimates of costs would have been helpful (both to the district court and to this court), we cannot say the district court abused its discretion in fixing the award at $ 1 million.
This assignment of error lacks merit.
Peremption of 10 Years
By its fifth assignment of error, Foster Wheeler urges the district court erred in failing to grant its motion for directed verdict and then in failing to submit jury charges or interrogatories on La. R.S. 9:2772 A and E. Subsection A prohibited any action against any person "performing the construction of immovable, or improvement to immovable property," more than 10 years after the work *610 was accepted.[8] Foster Wheeler argues that it completed construction of the boilers in 1965, but Ms. Berry did not file this suit until 2015, 50 years later. In support, it cites Exxon Corp. v. Foster Wheeler Corp. , 2000-2093 (La. App. 1 Cir. 12/28/01), 805 So.2d 432, writ denied , 2002-0261 (La. 3/28/02), 812 So.2d 633, in which the court applied § 2772 to dismiss a products liability claim arising out of a pipe fitting that was installed in 1963, malfunctioned and caused a fire in 1993, and was the subject of a lawsuit in 1994. Foster Wheeler argues that its work at Olin satisfied the statute, and if the jury had known about § 2772, this would have materially affected the outcome of the case. It asks this court to reverse the judgment, based on § 2772 peremption, or to vacate the judgment and remand for a new trial in which the jury can consider the statute.
Ms. Berry responds that Foster Wheeler waived this issue because it never requested a jury instruction or interrogatory on R.S. 9:2772. On the merits, she contends that the statute does not apply "when a contractor acquires knowledge of a dangerous defect and fails to warn the owner," Curtis v. Branton Indus. Inc. , 2006-675 (La. App. 3 Cir. 11/2/06), 944 So.2d 716, writs denied , 2007-0291 (La. 4/20/07), 954 So.2d 161 -0295, -0297 (La. 4/20/07), 954 So.2d 162. She also argues that Foster Wheeler's regular maintenance and repair work on the boilers amounted to "possession or control, as owner, lessor, tenant, or other possessory interest," and this disqualifies Foster Wheeler from asserting the peremption, under Subsection E. Rando v. Anco Insulations Inc. , 2008-1163 (La. 5/22/09), 16 So.3d 1065 ; Chaisson v. Avondale Indus. Inc. , 2005-1511 (La. App. 4 Cir. 12/20/06), 947 So.2d 171, writ denied , 2007-0411 (La. 4/5/07), 954 So.2d 145.
From this record, it is difficult to say whether or when Foster Wheeler may have requested jury charges regarding R.S. 9:2772.[9] Its proposed jury charges, supplemental jury charges and jury interrogatories, filed in open court after closing arguments, do not mention peremption or R.S. 9:2772. However, Foster Wheeler made an oral motion for directed verdict on these issues, which the district court entertained and denied. For our purposes, the issue was properly presented to the district court.
Peremptive statutes are strictly construed against the peremption and in favor of the claim. Lomont v. Bennett , supra ; Hunter v. Jindal , 45,130 (La. App. 2 Cir. 10/13/09), 20 So.3d 592, writ denied , 2009-2237 (La. 10/15/09), 18 So.3d 1292. La. R.S. 9:2772 A stated, in pertinent part:
[N]o action * * * including but not limited to an action * * * to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning * * * or administration related to any building, construction, demolition, or work, shall be brought against any person *611 * * * performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1 [.]
The statute applies to "planning, construction, design, or building," but this is broadly defined to include "building, construction, demolition, or work." The record shows that even though Olin accepted Foster Wheeler's initial construction of the boilers in 1965, Foster Wheeler continued to come to the mill semiannually for outages, through the time Mr. Berry retired, in 2010. The district court was entitled to treat this regular maintenance and repair as "work." Ms. Berry's suit was filed within 10 years of the last work that exposed her husband, and herself, to asbestos fibers. We perceive no manifest error in the district court's ruling.
This assignment of error lacks merit.
CONCLUSION
For the reasons expressed, the judgment is affirmed. All costs are to be paid by Foster Wheeler LLC.
AFFIRMED.

The current owner of the mill is Graphic Packaging International.

The defendants who settled pretrial were General Electric Co. ("GE"), and the "valve and pump defendants," Northern Pump Co., Warren Pumps LLC, Goulds Pumps Inc., Gardner Denver Inc. and Crane Co.

Roberts v. Owens-Corning Fiberglas Corp. , 2003-0248 (La. App. 1 Cir. 4/2/04), 878 So.2d 631, writ denied , 2004-1834 (La. 12/17/04), 888 So.2d 863 ; Oddo v. Asbestos Corp. Ltd. , 2014-0004 (La. App. 4 Cir. 8/20/15), 173 So.3d 1192, writ denied , 2015-1712 (La. 11/6/15), 180 So.3d 308 ; Warren v. Sabine Towing & Transp. Co. , 2001-0573 (La. App. 3 Cir. 10/30/02), 831 So.2d 517, writs denied , 2002-2926, -2927 (La. 2/14/03), 836 So.2d 116, 2002-2936 (La. 2/14/03), 836 So.2d 117.

Williams v. Placid Oil Co. , 2016-839 (La. App. 3 Cir. 8/2/17), 224 So.3d 1101, writ denied , 2017-1501 (La. 11/17/17), 229 So.3d 929 ; Emery v. Owens-Corp. , 2000-2144 (La. App. 1 Cir. 11/9/01), 813 So.2d 441, writ denied , 2002-0635 (La. 5/10/02), 815 So.2d 842.

Ms. Berry had also filed a pretrial motion to exclude evidence of such knowledge on the part of Mr. Berry's union at the mill.

Foster Wheeler also cites two recent, unpublished cases. In one, the First Circuit reversed a trial court and assessed a virile share for a codefendant's settlement "following the swearing in of the jury," although the Supreme Court reversed this on other grounds, Williams v. Dow Chem. Co. , 17-0885 (La. App. 1 Cir. 7/20/17), 2017 WL 3096782, writ granted, judgment vacated , 2017-1712 (La. 12/15/17), 231 So.3d 605. In the other, the Orleans Civil District Court assessed a virile share to two defendants who settled "several days after trial had begun," Truxillo v. Bossier , 10-10951 (CDC Orl.), writ denied , 11-0651 (La. App. 4 Cir. 5/16/11) (unrep.), writ denied , 2011-1020 (La. 5/18/11), 63 So.3d 968.

She also contends that the Orleans Civil District court case cited by Foster Wheeler, Truxillo v. Bossier , was overruled by a later, unpublished opinion, Hayden v. 3M Co. , 2017-0308 (La. App. 4 Cir. 4/4/17) (unpub.), writ denied , 2017-0565 (La. 4/5/17), 218 So.3d 107.

La. R.S. 9:2772 A was amended by 1999 Acts, No. 1024, § 1, to reduce the peremptive period to seven years, and again by 2003 Acts, No. 919, § 1, to reduce it to its current five years. Subsection A was also amended by 1990 Acts, No. 712, § 1, to add "failure to warn" as a kind of action prohibited by the statute.

After Foster Wheeler filed this appeal, the court reporter sent a cost estimate based on the complete record, of over 19,000 pages. Pursuant to a "motion for actual costs," the parties culled out roughly three-quarters of the pages of the pleadings, bringing the record down to 5,300 pages. We commend the parties for their agreement to make the record more manageable, but have noticed certain gaps and cannot state to a certainty that Foster Wheeler never requested an instruction on R.S. 9:2772.